IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CANDACE L. LANE                                                        PLAINTIFF

     VS.                        Civil No. 2:14-cv-02078-MEF

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                         DEFENDANT

## MEMORANDUM OPINION

     Plaintiff, Candace L. Lane, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background

     Plaintiff protectively filed her application for DIB on October 26, 2011, alleging an onset date of March 1, 2004, due to back and neck pain, anxiety, depression, blindness and bipolar disorder. (T. 164) Her application was denied initially on February 16, 2012, and upon reconsideration on May 21, 2012. (T. 76-78, 80-81) Plaintiff requested an administrative hearing (T. 89-90), and the hearing was held on November 19, 2012, before the Hon. Glenn A. Neel, Administrative Law Judge ("ALJ"). (T. 29-71) Plaintiff was present and represented by her attorney, Fred L. Caddell. Also present at the hearing was Floyd J. Massey, Vocational Expert ("VE"). (T. 29, 31)

Plaintiff was 42 years old at the time of the hearing. (T. 34-35) Although a Disability Report reflected an 11th grade education, Plaintiff testified that she graduated from high school. (T. 35, 165) She had past relevant work ("PRW") experience as a data entry clerk for Loislaw from 2001 to 2004, as an office clerk for an RV dealership from 1995 to 1999, as a retail clerk at Dillards in 2000 to 2001, and as a quality control technician for ConAgra in 1994. (T. 36-37, 39-42, 64-67, 165) Plaintiff last worked on March 1, 2004. Her Disability Report stated that she stopped working because of her condition, but Plaintiff testified that she stopped working because she was laid off when Loislaw outsourced the work to India. (T. 42, 164) She did not return to work because her husband wanted her to stay home. (T. 43)

In a Decision issued on March 8, 2013, the ALJ found: (1) that Plaintiff last met the insured status requirements of the Act on March 31, 2009; (2) that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 1, 2004 through her date last insured on March 31, 2009; (3) that through the date last insured, the Plaintiff had medically determinable impairments of scoliosis, disorder of the lumbar spine, disorder of the cervical spine, and anxiety; (4) that through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months, and therefore, Plaintiff did not have a severe impairment or combination of impairments; and, (5) that Plaintiff was not under a disability, as defined by the Act, at any time from the alleged onset date of March 1, 2004 through the date last insured on March 31, 2009. (T. 16-23)

Plaintiff appealed this decision to the Appeals Council (T. 8-10), but said request for review was denied on February 3, 2014. (T. 1-7) Plaintiff then filed this action on April 7, 2014. (Doc. 1)

This case is before the undersigned pursuant to the consent of the parties. (Doc. 5) Both parties have filed appeal briefs (Docs. 8 and 9), and the case is ready for decision.

## II.  Applicable Law

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a medically determinable physical or mental impairment that has lasted at least one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382(3)(c). A claimant must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require application of a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. 20 C.F.R. §§ 404.1520(a)-(f). Only if the final stage is reached does the fact finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520 and 416.920.

### III.  Discussion

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff was not disabled from the alleged date of onset on March 1, 2004 through the date last insured ("DLI") on March 31, 2009. Plaintiff raises three issues on appeal: (A) that the ALJ failed to fully develop the record; (B) that the ALJ erred as to credibility; and, (C) that the ALJ erred as to his Step Two analysis. (Doc. 8, pp. 10-17) Each issue is addressed in turn.

-4-

## A.  No Failure to Fully Develop the Record

Plaintiff argues that if the ALJ thought the Plaintiff's true work related restrictions were not evident from the record, she believes the ALJ should have sought further clarification regarding her impairments from her treating physicians, Dr. Sutterfield and Dr. Hays. She suggests that the ALJ should have re-contacted the treating physicians to inquire as to the severity of the Plaintiff's impairments at the time of the date last insured. (Doc. 8, p. 10)

The ALJ has a duty to fully and fairly develop the record. *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992), quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983). The ALJ, however, is not required to act as Plaintiff's counsel. *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a "reasonably complete" record); *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for him to make an informed decision. *See Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994).

The need for medical evidence does not necessarily require the Commissioner to produce additional evidence not already within the record. An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient

basis for the ALJ's decision. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). Providing specific medical evidence to support her disability claim is, of course, the Plaintiff's responsibility, and that burden of proof remains on her at all times to prove up her disability and present the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. §§ 404.1512(a) and (c), 416.912(a) and (c).

Considering the evidence as a whole in the present case, the Court concludes that the ALJ was not required to further develop the record because it was already "reasonably complete," and it contained sufficient evidence from which the ALJ could make an informed decision.

At the beginning of the administrative hearing, the ALJ inquired whether Plaintiff's counsel had an opportunity to review everything in the electronic folder. Counsel responded in the affirmative. Counsel was asked if he had any objections, and counsel stated that he had none. (T. 31) When asked by the ALJ, "[a]re you aware of any documentary evidence we don't have that is relevant to the time frame and consideration?", counsel advised that the two treating sources before the date last insured, Vikki Sutterfield and Wallace Hays, had supplied medical source statements, that counsel had inquired of them as to whether or not the medical source statements would have applied at the time of DLI, and that counsel was awaiting those responses and some additional records from Dr. Hays. (T. 31-32) The ALJ agreed to leave the record open to allow for the submission of those additional records. (T. 32-33) Certain additional treatment records from Dr. Hays, another copy of Dr. Sutterfield's medical source statement[1] dated September 12, 2012, and some 2003 emergency department records from St. Edward Mercy Medical Center were later

---

[1] Dr. Sutterfield's medical source statement dated September 12, 2012 had previously been received and was already part of the record at the time of the administrative hearing. Exhibit 18F.

received and incorporated into the record as Exhibits 24F, 25F and 26F. (T. 388-402, 403-405, 406-412) It is significant to the Court that Plaintiff's counsel made no mention of the need for any additional medical records, nor the necessity to re-contact Plaintiff's two treating physicians, beyond submission of those records which were eventually included in the record. See *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) ("it is of some relevance to us that the lawyer did not obtain (or, so far as we know, try to obtain) the items that are now being complained about").

Plaintiff now urges, however, that the ALJ was obliged to re-contact those two treating physicians to inquire as to the severity of Plaintiff's impairments at the time of DLI. Plaintiff argues, in effect, that if the medical evidence of record was unclear to the ALJ, or if it seemed to lack foundation, the ALJ was duty bound to develop the record further by asking Plaintiff's treating physicians for more information. The argument lacks merit for the reasons discussed below.

First, a chiropractor, such as Dr. Hays, is not even considered an "acceptable source" of medical information to prove disability. *See* 20 C.F.R. § 404.1513(d); SSR 06-3p; and, *Cronkhite v. Sullivan*, 935 F.2d 133, 134 (8th Cir. 1991).

Next, "[i]t is the ALJ's job to reach a decision as to the claimant's legal disability by evaluating the objective medical evidence before him." *See Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003) (conclusory statements by a doctor, if unsupported by the medical record, do not bind the ALJ in his disability determination). Thus, physician opinions about functional limitations or a claimant's ability to work are not required in order for substantial evidence to support an ALJ's decision.

Third, an ALJ is only required to re-contact a physician to seek additional evidence or clarification if some crucial issue is undeveloped in the record. *Stormo v. Barnhart*, 377 F.3d 801,

806 (8th Cir. 2004). Here, it was not a matter of some crucial issue being undeveloped, but simply that there was very little medical evidence of treatment prior to Plaintiff's DLI for the ALJ to consider.

The medical evidence prior to Plaintiff's DLI included hospital records from Sparks Regional Medical Center for a ten day admission in October 2000, for post traumatic stress disorder, panic disorder, and a history of poly-substance abuse (alcohol and amphetamine). Plaintiff was discharged in stable condition, with a GAF score of 55, and Zoloft and Seroquel were prescribed. (T. 344-345) Subsequent to that hospitalization, Plaintiff went to work for Loislaw where she worked full-time, at the substantial gainful activity level, as a case law clerk from 2001 until being laid off on March 1, 2004. (T. 39-42, 159) She testified that up to that point she was not having trouble doing that work. (T. 42) After being laid off, Plaintiff did not try to look for other work because "my husband had me stay home." (T. 42-43)

On August 31, 2003, Plaintiff presented to the emergency room at St. Edward Mercy Medical Center with complaints of neck pain secondary to a motor vehicle accident the Friday before. She was diagnosed with a cervical strain; Motrin, Flexeril and Darvocet were prescribed; and, Plaintiff was advised to follow up with her physician of choice in seven or eight days. These records do not document that Plaintiff's work activities were restricted in any way. (T. 408-412) Plaintiff first saw Dr. Hays for chiropractic treatment on September 3, 2003, and she described having pain in her "neck and between shoulders" after the automobile accident. (T. 394-398) From September 3, 2003 through November 12, 2003, Plaintiff saw Dr. Hays for 27 office visits. (T. 399-400) During her visit on September 8, 2003, it was noted that Plaintiff had gone back to work. (T. 399) On September 17, 2003, she advised that she was "a lot better" and "no headache" was noted. (T. 399) She was noted

by Dr. Hays to be "feeling better," "better," "a lot better," "doing good," and experiencing "positive results" at many of these visits. (T. 399-400) At no time during this course of chiropractic treatment did Dr. Hays restrict Plaintiff's work related activities. She was released from his care on November 12, 2003. (T. 400)

Also prior to Plaintiff's DLI was an emergency room visit on December 30, 2003 for a sore throat. Plaintiff presented with no acute distress, examination of her head and neck were normal, and nothing was documented that would support a finding of any severe impairment. (T. 233-237)

Plaintiff returned to Dr. Hays for a series of seven office visits from October 27, 2004 through November 19, 2004, during which chiropractic treatment was provided for Plaintiff's low back. (T. 393) Then, according to the treatment records, Plaintiff did not return to see Dr. Hays again until September 13, 2007, when she saw him for one office visit. (T. 389-390) At that time, Plaintiff reported that she was employed at Budget Roofing. (T. 389) Plaintiff did not see Dr. Hays again until July 16, 2009, over three months after her DLI.

No treating physician had completed any medical source statement prior to Plaintiff's DLI evidencing that Plaintiff suffered from any severe and disabling impairment. The only medical source statements submitted were prepared well over three years after Plaintiff's DLI. The medical source statement from Dr. Sutterfield purports to reflect Plaintiff's ability to do work-related activities "on or before March 31, 2009," but the medical evidence of record shows that Plaintiff saw Dr. Sutterfield only once, on February 23, 2009, prior to the DLI. At that visit, Plaintiff complained of stress, stating that Xanax "works well." Her psychiatric exam revealed a normal mood, appropriate affect, and normal memory. Dr. Sutterfield noted an impression of anxiety, and a low dose prescription for Xanax was given. No work related limitations or restrictions were documented.

(T. 378-379) An addendum to the February 23, 2009 office notes was made on February 27, 2009, and it reflected increased anxiety, "worse [with] *work* - daily stressors," that her heart rate was increased, and she was "very nervous and shaky." (Emphasis added.) It was noted again that "Xanax worked in the past." No further treatment was noted, nor were any work related restrictions. (T. 379)

Thereafter, Plaintiff saw Dr. Sutterfield only five other times for an assortment of minor problems. On July 27, 2009, for sinusitis. (T. 376-377) Four months later, on November 20, 2009, for a sore throat and anxiety (Lexapro prescribed). (T. 241-242) On March 11, 2010 for bacterial vaginosis. (T. 239-240) Then, over two years later, on May 9, 2012, when it was noted that she is "[t]aking lexapro," "doing well," with "[n]o side effects," and was "seeing chiropractor" for treatment after a November motorcycle accident. At that time, the review of systems was negative for back pain, neck pain or joint pain and swelling; no headaches were noted; her general appearance and mental status were both good; and, she was advised to continue taking meds for anxiety and seeing the chiropractor for musculoskeletal pain. (T. 363-365) The last appointment of record was on September 11, 2012. (T. 368-370) Plaintiff complained that her back was "hurting more," that she "has had constant pain," and that "pain has been worse even with adjustments." (T. 368) Her general appearance and mental status were again noted to be good. Upon physical examination, her back had full range of motion, with no tenderness, palpable spasm or pain on motion; there were no neurological deficits; and, no joint tenderness, deformity or swelling was noted. Plaintiff was advised to "notify if current symptoms continue." (T. 369-370) Dr. Sutterfield's medical source statement was prepared the following day, September 12, 2012, and it set forth significant limitations and restrictions not mentioned in any of Dr. Sutterfield's prior treatment records. (T. 341-342)

Upon such evidence as a whole, the ALJ could adequately weigh Dr. Sutterfield's medical

source statement of September 12, 2012 without obtaining clarification or further medical source information. *See Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (explaining that "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (internal quotation marks and citation omitted)); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (recognizing that "[w]e have upheld an ALJ's decision to discount a treating physician's [medical source statement] where the limitations listed on the form stand alone, and were never mentioned in [the physician's] numerous records o[f] treatment nor supported by any objective testing or reasoning" (first and second alterations added) (internal quotation marks and citation omitted)).

The evidence of record contains reports of evaluations and treatment of Plaintiff's alleged physical and mental impairments prior to her DLI on March 31, 2009. The record shows that Plaintiff received minimal treatment, her anxiety was controlled with medication, her diagnostic examinations were essentially normal, and Plaintiff worked at the substantial gainful activity level during the relevant period. Notably, most of the medical evidence submitted by Plaintiff is dated after Plaintiff's DLI. In addition to the records of her treating physician and chiropractor, and the records of her emergency room visits, the medical evidence included two psychiatric review technique forms from state agency medical consultants (T. 304-316, 322-334), and medical evaluation and case analysis by state agency medical consultants (T. 299, 337).

One's disability onset date must be based on the facts and can never be inconsistent with the medical evidence of record. *See* SSR 83-20. When there is little evidence of an alleged impairment

-11-

and substantial evidence to the contrary, an ALJ can make an informed decision without having to develop the record further. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Such are the circumstances in this case. No crucial issue was undeveloped. The medical evidence simply does not support Plaintiff's allegation of disability onset on March 1, 2004 or before her DLI on March 31, 2009. The evidence fully and completely documents Plaintiff's physical and mental impairments during and after the relevant period, and it provides a sufficient basis for the ALJ's decision. Accordingly, the undersigned finds that the ALJ was not obligated to obtain even more medical evidence to develop the record further. If Plaintiff wanted to present more specific information in addition to the medical evidence of record, she had the opportunity and should have done so. *Onstad*, 999 F.2d at 1234. Reversal for failure to fully and fairly develop the record is warranted only where such failure is unfair or prejudicial. *Haley*, 258 F.3d at 748. Plaintiff has not shown that the ALJ failed to develop the record in an unfair or prejudicial manner. Plaintiff's argument on this point must be rejected.

**B. The ALJ Properly Considered Plaintiff's Credibility**

Among the ALJ's findings is his determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms prior to the date last insured, March 31, 2009, are not entirely credible for the reasons explained in this decision." (T. 18) Plaintiff contends that the ALJ did not perform a proper *Polaski*[2] analysis in that he summarily dismissed her subjective complaints of pain without properly discussing why they were not entirely credible. (Doc. 8, pp. 12-13) Plaintiff argues that "the ALJ [did] not give any solid, substantiated reasons for discrediting the Plaintiff's testimony," and that "there is no citation of any evidence which would discredit the

---

[2] *Polaski v. Heckler*, 739 F.2d 1320 (1984).

credibility of the Plaintiff in this case." (Doc. 8, p. 14) The Court disagrees. The ALJ did appropriately address Plaintiff's credibility by examining and addressing the relevant medical evidence, application documents, and testimony at the hearing in accordance with applicable regulations, rulings, and Eighth Circuit case law.

The credibility of a claimant's subjective testimony is primarily for the ALJ to decide. *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010). The ALJ's credibility determination will be upheld if the ALJ provides good reasons for discounting the claimant's subjective complaints - such as inconsistencies in the record or the factors set forth in *Polaski* - and those reasons are supported by substantial evidence. *Gonzales v. Barnhart*, 465 F.3d 890, 895-96 (8th Cir. 2006).

In assessing the credibility of a claimant, the ALJ is required to examine and apply the following five factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and, (5) the functional restrictions. *Polaski*, 739 F.2d at 1322. A methodical discussion of each factor is not required, as long as the ALJ acknowledges and examines these factors prior to discounting the Plaintiff's subjective complaints. *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000).

While the ALJ did not specifically recite the *Polaski* factors for assessing a claimant's credibility, the ALJ did state that in making his findings he considered all symptoms and the extent to which such symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and SSRs 96-4p and 96-7p. (T. 17) These regulations broadly mirror the *Polaski* factors, and SSR 96-7p tracks and expands on those factors.

-13-

As mentioned above, the record before the ALJ contained very few treatment records relating to Plaintiff's alleged impairments prior to Plaintiff's DLI, and the ALJ commented "[t]hat alone is strong evidence that the claimant did not have a severe impairment prior to her date last insured." (T. 18). *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (the absence of medical evidence supporting plaintiff's subjective complaints of pain is a factor that supports the discounting of such complaints); *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (infrequent treatment is a basis for discounting a claimant's subjective complaints); and, *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (treating physician's conservative treatment inconsistent with plaintiff's allegations of disabling pain).

The ALJ further based his credibility assessment on specific inconsistencies between Plaintiff's complaints and the record as a whole, as required by *Polaski*. Contrary to Plaintiff's assertion, the ALJ's Decision shows that he did refer to specific evidence that tended to discredit Plaintiff's subjective complaints of pain and limitation. For instance, the ALJ observed that Plaintiff "worked in some capacity in September 2007 (Exhibit 24F/2), which shows that the claimant was not as limited as alleged prior to the date last insured and undermines the credibility of the claimant's subjective complaints in her testimony and function report." (T. 20, 389) While Plaintiff stated in her Disability Report - Adult that she left work on March 1, 2004, "because of my condition(s)" (T. 164), the ALJ noted her testimony that she actually stopped working because she had been laid off, which indicated that her injuries from the 2003 automobile accident did not cause her to stop working. (T. 20, 42) The ALJ also considered Plaintiff's testimony that she did not try to look for other work after being laid off because her husband wanted her to stay home, not because of her alleged impairments. (T. 18, 42-43) The ALJ took into account the minimal treatment Plaintiff

-14-

received during the relevant period (T. 18, 233-37, 243-46); that Plaintiff's impairments were controlled with medication (T. 18, 243-44); that, at times, Plaintiff was non-compliant in taking her anxiety medication, which indicated that her anxiety was not as limiting as alleged (T. 21, 241-42); and, that there was no evidence that Plaintiff's treating physician placed any significant restrictions on her during the relevant period (T. 21, 233-37, 243-46). As the Commissioner points out, these were all "perfectly valid reasons" for discrediting Plaintiff's allegations of disabling symptoms. (Doc. 9, pp. 8-9)

The question, ultimately, is not whether the evidence supports the existence of an impairment, but whether the evidence of record as a whole can support a claimant's allegations of disabling symptoms. *Benskin v. Bowen*, 830 F.2d 878 (8th Cir. 1987). If there are inconsistencies in the evidence of record as a whole, the ALJ is free to disbelieve a claimant's subjective complaints and find them not credible. *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989).

The Eighth Circuit has held that, "[t]he ALJ is in the best position to gauge the credibility of testimony and is granted great deference in that regard." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). If the ALJ discredits a claimant's credibility and gives good reason for doing so, the Eighth Circuit has held that it will defer to the ALJ's judgment even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

In the present case, the ALJ has cited Social Security Regulations and Rulings that mirror the *Polaski* factors and expand upon them. It is clear to the undersigned that the ALJ applied the proper legal standard to the determination of whether Plaintiff's allegations and testimony were credible, and there is substantial evidence of record to support the ALJ's decision to discount Plaintiff's credibility.

-15-

### C.  The ALJ's Step Two Analysis

The ALJ denied benefits at step two of the five-step analysis, finding that none of Plaintiff's impairments were "severe" before her date last insured. For the reasons discussed below, the ALJ's finding is supported by substantial evidence.

Step two of the five-step evaluation to determine if a claimant is disabled states that a claimant is not disabled if her impairments are not "severe." *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). While severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), it is also not a toothless standard, and the Eighth Circuit Court of Appeals has upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007); *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); and, *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996).

Plaintiff testified that prior to her date last insured her primary health problems were her neck and the headaches which all originated from the automobile accident in 2003. (T. 48) The few medical records before the ALJ for the relevant period, however, do not establish that Plaintiff had

an impairment, or a combination of impairments, that caused more than a minimal limitation in her ability to do basic work activities prior to her date last insured on March 31, 2009.

Following her hospitalization in October, 2000 for post-traumatic stress disorder, panic disorder, and history of poly-substance abuse, Plaintiff returned to work at the substantial gainful activity level for another three and one-half years. (T. 154, 159, 344-56) *See Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (ALJ properly concluded that, since claimant had been able to work while having the exact same impairments she claimed made her unemployable, she was less than fully credible regarding her inability to work). The ALJ further considered that Plaintiff did not stop working in March 2004 due to some medical impairment, but rather, because her job had been outsourced and she had been laid off, and that she did not seek other work because her husband wanted her to stay at home. (T. 18, 42-43) *See Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) (finding the claimant did not lose his job because of his disability, he lost it because his position was eliminated).

Plaintiff was involved in a motor vehicle accident on August 29, 2003. The medical evidence does not support that the injuries Plaintiff suffered in that automobile accident were severe or disabling. Plaintiff's chief complaints were of neck pain, and she was diagnosed with a cervical strain. Medications were prescribed, and Plaintiff was told to follow up with her physician. Plaintiff's work activities were not restricted by the emergency room physician. (T. 408-412) Plaintiff then saw her chiropractor,  Dr. Hays, and she described having pain in her "neck and between shoulders." (T. 394-398) Plaintiff saw Dr. Hays for 27 office visits over the next couple of months. (T. 399-400) As of September 8, 2003, Plaintiff had gone back to work. (T. 399) The chiropractic records show that Plaintiff was doing "a lot better" and experiencing "positive results."

-17-

(T. 399-400) The records also show that Dr. Hays did not restrict Plaintiff's work related activities, and she was released from his care on November 12, 2003. (T. 400) Less than two months later, on December 30, 2003, Plaintiff went to the emergency room for a sore throat. The examination of her head and neck were normal, and nothing was documented that would indicate Plaintiff was still suffering from the injuries she sustained in the August 2003 car accident. (T. 233-237) *Smith*, 987 F.2d at 1374 (treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

Plaintiff saw Dr. Hays again in October, 2004. Plaintiff received chiropractic care for her low back for about three weeks. No treatment was provided for her neck at that time, and no restrictions of Plaintiff's activities were noted. (T. 393) Plaintiff returned to see Dr. Hays again, three years later, in September, 2007, when she saw him for one office visit. (T. 389-390) On her Case History Update form, Plaintiff reported that she was employed at Budget Roofing. (T. 389) The ALJ found that this would also indicate that the symptoms related to Plaintiff's 2003 motorcycle accident did not cause more than a minimal limitation in her ability to do basic work activities. (T. 21) *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005) (holding that working after the onset of an impairment is some evidence of an ability to work).

Plaintiff saw Dr. Sutterfield only once, on February 23, 2009, prior to her DLI. Plaintiff complained of stress, but stated that Xanax "works well." Her psychiatric exam revealed a normal mood, appropriate affect, and normal memory, and Dr. Sutterfield noted an impression of anxiety. A low dose prescription for Xanax was given. No work related limitations or restrictions were documented. (T. 378-379) The ALJ found that Plaintiff's visit with Dr. Sutterfield "does not support a finding that prior to her date last insured the claimant had an impairment that caused more than a

-18-

minimal limitation in the ability to do work-like tasks." (T. 18) The Court agrees. If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009). Here, the ALJ found that Plaintiff's anxiety disorder was controlled with medication, and this finding is adequately supported in the record.

The ALJ further remarked that when Plaintiff saw Dr. Sutterfield again for anxiety on November 20, 2009, the record from that visit indicated that Plaintiff had stopped taking her Xanax ("used meds in past"), and that not taking her medication would also indicate that Plaintiff's anxiety was not as limiting as alleged. (T. 21, 241-42) An ALJ may properly consider a claimant's non-compliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001), including the failure to take prescription medications, *Riggins v. Apfel,* 177 F.3d 689, 693 (8th Cir. 1999).

The ALJ went on to discuss that the medical records for the time period after the date last insured also show that Plaintiff is not as limited as alleged, which would further support a finding that Plaintiff did not have a severe impairment prior to her DLI. The ALJ specifically referred to the following records. Plaintiff saw Dr. Sutterfield on July 27, 2009, for an upper respiratory problem, at which time Plaintiff was noted to have a history of anxiety, but her anxiety was controlled with medication. (T. 18, 243-44) Although Plaintiff testified that she has headaches "all the time," that "[t]hey're pretty much constant," and "every other day probably" (T. 45), the ALJ observed that during Plaintiff's office visit with her eye doctor on December 21, 2010, no headaches were noted. (T. 18, 251) The ALJ mentioned that on September 11, 2012, almost one year after Plaintiff's motorcycle accident in September 2011 and well after Plaintiff's DLI, Dr. Sutterfield's treatment

-19-

records indicate that Plaintiff had full range of motion in her back and no tenderness, palpable spasm or pain on motion. (T. 19, 370) The records from Plaintiff's hospitalization following the motorcycle accident document that other than multiple rib fractures sustained in the accident, Plaintiff had only minimal degenerative changes in her cervical spine; that she reported no headache or neck pain; that no cervical spine tenderness, no spasm or paracervical tenderness was noted; that she had full range of motion of her neck without pain; that she was not tender over her spine; that she had full range of motion of all joints; and, that she was discharged home "to resume prescription of low-dose Lexapro and Xanax," with her activities limited only by her tolerance. (T. 257-58, 264, 282-83) The ALJ also noticed that Plaintiff saw Dr. Hays twice in the fall of 2011 following the motorcycle accident, and that in his letter dated December 5, 2011, Dr. Hays stated that Plaintiff only reported "moderate neck pain," and that she had not returned for any follow up treatments. (T. 20, 287) The record shows that Plaintiff did not return to see Dr. Hays again until January 11, 2012, and then for only four more sporadic visits through September 12, 2012. (T. 391) In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *Shannon*, 54 F.3d at 487 (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

Considering all of the evidence as a whole, the ALJ's finding that Plaintiff did not have a physical or mental impairment, or a combination of impairments, that significantly limited her ability to perform basic work activities prior to her date last insured is supported by substantial evidence. The undersigned, therefore, finds that the ALJ's step two determination is supported by substantial evidence and should be affirmed.

### IV.  Conclusion

Having carefully reviewed the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 17th day of June, 2015.

/s/ _Mark E. Ford_

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE